**E-Filed 8/25/2011**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| LIFETOUCH NATIONAL SCHOOL STUDIOS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KIMBERLY MOSS-WILLIAMS, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case Number 5:10-cv-05297 JF (HRL)<br><br>ORDER[1] GRANTING MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT<br><br>[Re: Docket Nos. 33, 40] |

Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff Lifetouch National School Studios, Inc. ("Lifetouch") seeks leave to file a second amended complaint[2] ("SAC") to add Creative Imaging by Robert Garcia, Inc. ("Creative Imaging") as a defendant.[3] The Court concludes that the

---

[1] This disposition is not designated for publication in the official reports.

[2] On November 8, 2010, Lifetouch filed its first amended complaint ("FAC"), adding a claim for violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.*

[3] Defendant Kimberly Moss-Williams ("Moss") filed untimely opposition to the instant motion because of an asserted inadvertent error and moves to enlarge time for her response. Mot. to Enlarge Time, filed August 18, 2011. In order to ensure a complete record, the motion will be granted.

1

motion is appropriate for determination without oral argument and will vacate the hearing date of August 26, 2011. *See* Civ. L.R. 7-1(b). For the reasons set forth below, the motion will be granted.

## I. BACKGROUND

**A.      Factual History**

Lifetouch provides photography services and related products to schools, students, and families. FAC ¶ 6. In August 2001, Lifetouch hired Moss as a sales representative. *Id.* at ¶ 7. As a condition of her employment, Moss agreed in writing to maintain the confidentiality of all Lifetouch customer lists, pricing arrangements, and other trade secrets. *Id.* at ¶¶ 19-21. In October 2009, Moss terminated her employment with Lifetouch voluntarily and accepted a position with Lifetouch's competitor Creative Imaging. *Id.* at ¶¶ 8-9. Prior to leaving Lifetouch, Moss allegedly copied Lifetouch's proprietary and confidential information from her company-issued computer to an external data storage device (referred to in the FAC as a "thumb drive") and used this information to solicit Lifetouch customers once she was employed with Creative Imaging. *Id.* at ¶¶ 16, 23-24, 37.

Lifetouch filed this action in the Alameda Superior Court, but the action subsequently was removed to this Court on the basis of federal question jurisdiction. Notice of Removal, filed November 23, 2010. Lifetouch initially chose not to assert claims against Creative Imaging because counsel for Creative Imaging asserted in a written statement that the company "does not have, nor has it ever had, the alleged 'thumb drive,'" and that Creative Imaging "is not in the possession of, has never used, nor has it used in any way accessed [sic] any of the information . . . that Kimberly Moss [allegedly] obtained. . ." Carp Decl. ISO Mot. ("Carp Decl."), Ex. D (November 24, 2009 Letter from counsel for Creative Imaging to Lifetouch).

On March 22, 2011, during Moss's deposition, Lifetouch learned for the first time that Moss had accessed the thumb drive on Creative Imaging computers. *Id.* at Ex. E. In addition, Moss admitted that during her first week of employment at Creative Imaging she began soliciting Lifetouch customers to do business with Creative Imaging. *Id.* Lifetouch asserts that

these new developments give rise to a claim for misappropriation of trade secrets against Creative Imaging under the California Uniform Trade Secrets Act ("UTSA" or the "Act"), Cal. Civ. Code § 3426, *et seq.*

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 15(a) provides that "[t]he court should freely give leave when justice so requires." Absent any "apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks omitted). Rule 15 thus embraces "the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.* at 181-82 (quoting *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). In short, the policy permitting amendment is to be applied with "extreme liberality." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation omitted). Factors which merit departure from the usual "[l]iberality in granting a plaintiff leave to amend" include bad faith and futility. *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). Undue delay, standing alone, is insufficient to justify denial of a motion for leave to amend. *Id.* at 758.

## III. DISCUSSION

Moss argues that the motion should be denied because amendment would be futile and would violate the prohibition against meritless claims set forth in Fed. R. Civ. P. 11(b). According to Moss, Lifetouch has no evidence that Creative Imaging ever acquired any proprietary information or that it used such information to solicit Lifetouch customers. Moss also contends that Lifetouch's claim is not actionable, because misappropriation requires that the alleged tortfeasor acquire trade secrets intentionally, and at most Creative Imaging received the Lifetouch trade secrets inadvertently. However, under the UTSA, misappropriation includes not only the intentional acquisition of a trade secret but also the unpermitted disclosure or use of a trade secret with knowledge that the secret was obtained by improper means. Cal. Civ. Code § 3426.1(b)(2). Here, Lifetouch already has alleged that Moss improperly acquired proprietary information and took that information to Creative Imaging. Whether or not Creative Imaging

used the information and knew that it was obtained improperly is a question of fact.

Additionally, Moss argues that the confidential information at issue is not protected by the UTSA.  The Act defines "trade secrets" as "a formula, pattern, compilation, program, device, method, technique, or process, that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Relying on *Fortna v. Martin*, 158 Cal.App.2d 634 (1958) and *American Paper & Packaging Prods., Inc. v. Kirgan*, 183 Cal.App.3d 1318 (1986), Moss contends that neither customer lists nor pricing methods qualify as trade secrets under California law.  *See, e.g.,* 158 Cal.App.2d at 640 "A former agent may use, after the termination of his employment, methods of doing business and processes which are but skillful variation of general processes known to the particular trade." (quotation omitted). Courts since *Fortna* and *American Paper* have held otherwise.  *See Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514, 1521-22 (1997) ("[W]here the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market. Such lists are to be distinguished from mere identities and locations of customers where anyone could easily identify the entities as potential customers."); *See also Whyte v. Schlage Lock Co.*, 101 Cal.App.4th 1443, 1454-56 (2002) (trade secrets may constitute "cost and pricing information not readily known in the industry-information such as the cost of materials, labor, overhead, and profit margins . . .") (citing *SI Handling Systems, Inc. v. Heisley* 753 F.2d 1244, 1260 (3d Cir. 1985)).

Lifetouch points out that prior to the removal of this action, the Superior Court concluded that the description of the trade secrets contained in the FAC was sufficient to support a claim for misappropriation.  In overruling Moss's demurrer, the state court explained, "[w]hether, e.g., Plaintiff's customer lists and identity of school decision makers embody information that is readily ascertainable through public sources . . ., and whether the commission structures and pricing arrangements are unique to Plaintiff or merely reflect commonly used industry formulas . . . cannot be determined from the face of the pleadings." Carp Supp. Decl. Ex. I.

Accordingly, it appears that Lifetouch is justified in seeking leave to amend, and it would

not be futile to add a claim for misappropriation of trade secrets against Creative Imaging. None of the factors that would overcome the liberal policy of Rule 15 are present here. Lifetouch sought to amend at the earliest possible date,[4] and Moss has not shown that she will be prejudiced by the proposed amendment. The parties have yet to engage in intensive fact discovery, no trial date has been set, and the facts underlying the proposed claim are essentially the same as those set forth in the FAC.

## IV. ORDER

Good cause therefor appearing, the motion for leave to file a second amended complaint is GRANTED. The amended pleading shall be filed within twenty (20) days after the date of this order. The hearing date of August 26, 2011 is VACATED.

DATED: August 25, 2011

JEREMY FOGEL
United States District Judge

---

[4] At the initial case management conference held on March 25, 2011, the parties were referred to mediation, which proved unsuccessful. One day after the attempted mediation, at a subsequent case management conference, Lifetouch informed the Court of its intent to seek leave to amend to add Creative Imaging as a defendant.

5