*E-Filed: October 15, 2013*

**United States District Court**
For the Northern District of California

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LIFETOUCH NATIONAL SCHOOL
STUDIOS, INC.,

    Plaintiff,

 v.

KIMBERLY MOSS-WILLIAMS; ET AL.,

    Defendants.

_____/

No. C10-05297 RMW (HRL)

**ORDER RE: DISCOVERY DISPUTE
JOINT REPORT #2**

**[Re: Docket No. 65]**

   The parties filed Discovery Dispute Joint Report #2 to resolve whether Plaintiff Lifetouch National School Studios, Inc. ("Lifetouch") may have a computer forensic specialist create a mirror image of the computers of defendant Creative Imaging By Robert Garcia ("Creative") to search for evidence of trade secret misappropriation, and if so, which party should bear the cost.  The Court issued an interim order requiring the parties to supplement the factual record, and the parties have done so.  The questions now before the Court are as follows:  should Creative produce its computers for forensic imaging?  If so, should the cost of the forensic examination be borne by the defendants (as a sanction for evidence spoliation), or should the expense fall on Lifetouch?

BACKGROUND

   Moss was an employee of Lifetouch before leaving for Creative, a competitor of Lifetouch. During the weekend before her last day at Lifetouch, October 19, 2009, Moss transferred personal information from her Lifetouch-issued computer to a thumb drive.  She had purchased the thumb

**United States District Court**
For the Northern District of California

1    drive over the summer to back up her hard drive, as she had been instructed to do by Lifetouch's IT

2    department, and the thumb drive still contained this information.  When she started work at

3    Creative, Moss used a Creative laptop to view the contents of the thumb drive.[1]  She maintains that

4    she did not transfer any information from the thumb drive to the Creative computer.  Upon realizing

5    that the thumb drive still contained Lifetouch information and determining that she did not need the

6    personal information, she destroyed the thumb drive with a hammer and threw the pieces in the

7    garbage.

8         Lifetouch sent Moss a series of letters after she left.  In a letter dated October 21, 2009,

9    Lifetouch reminded Moss of her ongoing duties under their sales representative agreement,

10   including confidentiality of Lifetouch proprietary information.  After discovering that Moss had

11   begun work with a competitor, Lifetouch's attorneys sent Moss a letter dated October 26, 2010

12   expressing its legal concerns.  They specifically requested preservation of evidence of

13   correspondence between Moss and Robert Garcia[2] and between Moss and Lifetouch customers,

14   warning of evidentiary sanctions if she failed to comply.  The letter also demanded a return of all

15   originals and copies of documents containing any confidential information or trade secrets of

16   Lifetouch, and that she not use or disclose any such information.  In a letter dated November 20,

17   2010, Lifetouch attorneys stated that they knew she had transferred information from her laptop to a

18   thumb drive right before she left, and they demanded that she preserve and return the thumb drive.

19   Moss responded by fax declaring that she had already destroyed the thumb drive.  Several more

20   correspondences between the parties ensued, with Moss continuously certifying that she had

21   destroyed the thumb drive as Lifetouch demanded ever greater assurances and threatened to file a

22   lawsuit.

23        Lifetouch sent similar letters to Garcia and Creative.  A letter dated October 26, 2010

24   requested the preservation of correspondence between Garcia and Moss and warned of possible

25   _____

26   [1] Moss believes she only used the thumb drive once with one Creative computer.  However, at her
     deposition, she admitted it was possible that she used it as many as five times with multiple
27   computers.  Moreover, she is unsure which computer she used it with and has used every Creative
     computer at one time or another.
28   [2] Robert Garcia is the founder and owner of Creative, himself a former Lifetouch employee who
     claims to have been harassed by Lifetouch with accusations of stealing trade secrets and the threat of
     a lawsuit.

                                        2

1  evidentiary sanctions.  In a letter dated November 20, 2010, Lifetouch demanded preservation of all

2  electronic devices in Creative's control, and a November 24th letter demanded production of all

3  computers that Creative provided for Moss's use.

DISCUSSION

4

5  A.  Forensic Imaging

6      1.  Production of Creative's Computers

7  Lifetouch argues that it is entitled to forensic imaging of Creative's computers to determine

8  whether Creative accessed and made use of the proprietary information and trade secrets that were

9  on the thumb drive.  On the other hand, defendants argue that Lifetouch has not established that any

10  of the information on the thumb drive is proprietary or constitutes trade secrets, and that the request

11  amounts to a fishing expedition.

12  "It is not unusual for a court to enter an order requiring the mirror imaging of the hard drives

13  of any computers that contain documents responsive to an opposing party's request for production of

14  documents." *Balboa Threadworks, Inc. v. Stucky*, 2006 U.S. Dist. LEXIS 29265, *7 (D. Kan. Mar.

15  24, 2006) (citing *Communications Center, Inc. v. Hewitt*, 2005 U.S. Dist. LEXIS 10891, *3 (E.D.

16  Cal., Apr. 5, 2005)).  In "cases where trade secrets and electronic evidence are both involved, the

17  Courts have granted permission to obtain mirror images of the computer equipment which may

18  contain electronic data related to the alleged violation." *Id.* at *7-8.  Plaintiff cites to three such

19  cases where courts ordered forensic imaging under similar circumstances. *See, e.g.*, *Weatherford v.

20  Innis*, 2011 U.S. Dist. LEXIS 59036 (D.N.D.) (ordering forensic imaging in trade secret

21  misappropriation case where defendant acknowledged downloading plaintiff's files onto thumb

22  drive).

23  Here, there is a sufficient nexus between the defendant's computers and the alleged

24  misappropriation of trade secrets to warrant forensic imaging of the computers.  Lifetouch alleges

25  that Moss had its proprietary information and trade secrets on a thumb drive that she connected to at

26  least one Creative computer.  Unfortunately, Moss destroyed the thumb drive and cannot remember

27  which computer she used to access the thumb drive.  Thus, Lifetouch's only recourse is to examine

28  the Creative computers that Moss may have used to view the contents of the thumb drive.

*United States District Court*
For the Northern District of California

3

United States District Court
For the Northern District of California

1    Defendants argue that Lifetouch has not established that any information on the thumb drive

2    was proprietary or constitute trade secrets because it was all publically available information.[3]

3    However, the thumb drive contained a backup of Moss's entire hard drive, and it is plausible that at

4    least some of that information was proprietary or constituted a trade secret.  The requested discovery

5    is at least "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ.

6    Proc. 26(b)(1).  Accordingly, Creative is compelled to produce its computers for forensic imaging.

7        2.   Protocol

8    The parties submitted a "Joint Statement Regarding Stipulated Protective Protocol for

9    Inspection of the Computers of Defendant Creative Imaging By Robert Garcia, Inc.," and attached a

10   "Stipulated Protocol" as Exhibit A.  The Court hereby adopts and orders the parties to abide by the

11   "Stipulated Protocol" as is, without the changes proposed by either party in the "Joint Statement."

12   B.   Cost-Shifting

13       3.   Spoliation

14   When a party is found to have engaged in spoliation of evidence, cost-shifting may be an

15   appropriate sanction to the party to who spoliated evidence. *See Genworth Fin. Wealth Mgmt. v.*

16   *McMullan*, 267 F.R.D. 443, 449 (D. Conn. 2010) (allocating 80% of the cost of computer mirror

17   imaging to party who admitted to the court that he knowingly and intentionally spoliated evidence).

18   "Spoliation of evidence is 'the destruction or significant alteration of evidence, or the failure to

19   properly preserve property for another's use as evidence in pending or reasonably foreseeable

20   litigation.'"  *Zubulake v. UBS Warburg LLD*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (quoting *West v.*

21   *Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  "Defendants engage in spoliation

22   of documents as a matter of law only if they had 'some notice that the documents were potentially

23   relevant' to the litigation before they were destroyed."  *United States v. Kitsap Physicians Service*,

24   314 F.3d 995, 1001 (9th Cir. 2002) (citing *Akiona v. United States*, 938 F.2d 158, 161 (9th

25   Cir.1991)).

26

27   _____

28   [3] For example, the client lists and pricing are easily obtained by using Google or schooltree.com to
     get a list of local schools whose websites then provide school picture information, or at least the
     contact information for the school administrator who can provide that information.

4

1   Lifetouch contends that Moss spoliated evidence by destroying the thumb drive after

2   receiving the November 20th letter specifically instructing her to preserve it.  This contention is

3   based on Garcia's deposition during which he testified that Moss showed him the letter and told him

4   that "she had the thumb drive."  It is not clear from the deposition testimony alone whether Garcia

5   meant that she still had it at the time, as Lifetouch asserts, or whether she had ever had it.  However,

6   Garcia clarified in his declaration that he meant the latter, and Moss has repeatedly declared, under

7   oath, that she destroyed the thumb drive in October.  One ambiguous statement in Garcia's

8   deposition is not sufficient to establish that Moss destroyed the thumb drive after being put on

9   notice to preserve it by the November 20th letter.

10   Lifetouch also suggests that Moss's duty to preserve may have arisen by the letters of

11   October 21 and 26, 2009.  However, the former merely reminded her of her obligations under the

12   Sales Representative Agreement, which said nothing of potential litigation or a duty to preserve

13   information.  The demand for preservation of evidence in the October 26 letter was limited to

14   correspondence between Moss and Garcia and between Moss and Lifetouch customers.  Even if the

15   October 26 letter was sufficient to trigger the duty to preserve because it referred to potential

16   litigation, Moss insists that she destroyed the thumb drive before receiving the October 26 letter.

17   Thus, the Court does not find that Moss spoliated evidence.

18   Lifetouch also asserts that Creative spoliated evidence by "recycling" its computers after

19   being put on notice to preserve them by the letter dated October 26, 2009.  To support its contention,

20   Lifetouch points to an email in which an attorney for Creative wrote that Creative recycles

21   computers in the normal course of business, and a response to an interrogatory in which Creative

22   stated that it has had a few computers crash since October 26, 2009 that have had to be restored or

23   replaced.  However, the replacement or restoration of three computers over nearly three years, out of

24   a total of 65 Creative computers, does not constitute destruction, significant alteration, or failure to

25   properly preserve evidence.  Moreover, Garcia expressly declared that Creative has not "destroyed"

26   any computers.  Thus, Creative did not spoliate evidence.

27   Neither Moss nor Creative spoliated evidence, and the cost of forensic imaging does not fall

28   on them for that reason.

4.   Undue Burden

Cost-shifting is also appropriate when the discovery sought "imposes an 'undue burden or expense' on the responding party." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316-17 (S.D.N.Y. 2003) (quoting Fed. R. Civ. P. 26(c)). The burden or expense of discovery is "undue" when it "outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). *Zubulake* established a seven-factor test to neutrally evaluate whether cost-shifting is warranted: "(1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total cost of production, compared to the amount in controversy; (4) the total cost of production, compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information." *Zubulake* at 322; *see also Hynix Semiconductor, Inc. v. Rambus, Inc.*, 2006 U.S. Dist. LEXIS 98229, *32-34 (N.D. Cal. Mar. 2, 2006) (applying *Zubulake's* seven-factor test). Of these factors, the first and second are weighed most heavily, the third through fifth weighed less heavily. The sixth factor "rarely" comes into play, but has the potential to outweigh all other factors, and the seventh is least important, though it can weigh against cost-shifting when the responding party stands to gain a "tangible or strategic" benefit.

The first factor, the extent to which the request is narrowly tailored, weighs heavily in favor of Creative.  Lifetouch seeks to have a forensic expert mirror the hard drives of over 60 Creative computers to find the one that Moss used to view the contents of the thumb drive, but onto which she swears she did not transfer any information.  It is more of a dragnet approach than a narrow tailoring.  However, the second factor weighs in favor of Lifetouch.  Although the request is very broad, it is the only option available due to Moss's destruction of the thumb drive and her inability to remember which computer she used with the thumb drive.

The cost-related factors, although less important than the first two, also weigh heavily in favor of Creative.  Lifetouch's prayer for relief in its amended complaint alleges damages in excess

United States District Court
For the Northern District of California

6

of $320,000 plus interest.  The cost of the forensic expert alone is estimated at $350,000.

Additionally, Lifetouch is in a much better position to absorb this cost.  Garcia stated that Creative,

a locally-operated business, does not have sufficient cash reserves and that paying such a great sum

would threaten its business.  Lifetouch, on the other hand, is a nationwide company that dominates

the local school photography market.[4]

The sixth and seventh factors, the least important, are not significant here.

Finally, in conducting a multi-factor test, it is important not to lose sight of the central

question, which "[w]hen evaluating cost-shifting . . . must be, does the request impose an 'undue

burden or expense' on the responding party?"  *Zubulake*, 217 F.R.D. at 322.  Given the broad scope

of the request, the cost of production, the resource disparity of the parties, the Court thinks that

requiring the defendants to bear the cost of an expert's search for information which it has

repeatedly asserted under oath does not exist, would constitute an undue expense.  Thus, the Court

finds if Lifetouch wishes to pursue its discovery request in accordance with the Joint Protocol, then

it will have to cover the cost of the forensic expert.  However, if the forensic expert finds that

information from the thumb drive was transferred to a Creative computer, then the Court may

reconsider the allocation of cost.

CONCLUSION

Creative is compelled to produce its computers in accordance with the Joint Protocol, but the

cost of an expert for the forensic imaging and examination shall be paid by Lifetouch.

**IT IS SO ORDERED.**

Dated: October 15, 2013

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[4] Moss estimated in her deposition that Lifetouch does business with nine out ten schools in the bay area.  Garcia states in his declaration that "Lifetouch grosses millions, if not billions, of dollars per year."

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C10-05297 RMW Notice will be electronically mailed to:**

Burton F. Boltuch    bboltuch@workplacelaw.biz

Dylan B. Carp    carpd@jacksonlewis.com, SanFranciscoDocketing@JacksonLewis.com, schroderb@jacksonlewis.com

Mark Slater Askanas    askanasm@jacksonlewis.com, barairom@jacksonlewis.com, sanfranciscodocketing@jacksonlewis.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**